## Kay *versus* The Pennsylvania Railroad Co.

1. A railroad company leased a lot for making side tracks from its main road to a canal basin and for unloading and piling lumber. The company had the right to use it as most convenient, for moving its cars.

2. The company had the right to detach cars and send them on without a brakesman, out of sight and around a curve.

3. This would be different when by license to others and by sufferance, they permitted the public to enjoy a privilege of passage which would bring them into danger.

4. Duties grow out of circumstances and what in one case would be a proper use of one's rights, may by change of circumstances, become negligence.

5. Culpable negligence is the omission to do that which a reasonable, prudent and honest man would do; or doing that which such a man would not do in the circumstances of the particular case.

6. If an owner has allowed persons a use of his property, tending to produce a belief that it will not be objected to and therefore to act on the belief, he is held to exercise his rights in this view, so as not to mislead others, without warning them of his intention to recall his permission.

7. Notice is required to a man who acts bonâ fide; not to him who wilfully uses that to which he pretends no title.

8. Persons who use their property so as to hold forth an invitation to enter, give license to do so, *e. g.*, innkeepers, merchants, &c.

9. Trespass will become right by sufferance and lapse of time.

10. Parol license and expenditure will estop without lapse of time.

11. The company allowed the neighboring population to use its tracks as a way across their lot. Presumption of a clear track could not arise as in other parts of their road.

12. Greater precaution was necessary under these circumstances than on other parts of the road.

13. The agents of the company detached a car and permitted it to run down grade without a brakesman on tracks through the lot. *Held*, that this was negligence.

14. Negligence is a mixed question of law and fact and the facts can be found only by the jury.

15. When the injury to a child incapable of knowing and avoiding danger is caused by actual negligence, its incapacity shields the child from responsibility.

16. If there be no negligence, the incapacity of the child creates no liability on the company.

17. When a child is placed in danger by the positive act of its guardian, this is contributory negligence.

18. The Act of April 4th 1868 (restricting damages for negligence) is retrospective, and is inoperative on cases occurring before its passage.

19. The effect of the act as to cases after its passage not decided.

20. Railroad Co. *v.* Hummel, 8 Wright 375, Gillis *v.* Railroad, 9 P. F. Smith 129, examined and distinguished.

21. Railroad Co. *v.* Spearin, 11 Wright 304, Smith *v.* O'Connor, 12 Id. 218, remarked on.

April 2d 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lycoming county:* No. 345, to January Term 1870.

This was an action on the case by Lizzie Kay, by her next

[Kay *v.* Pennsylvania Railroad Co.]

friend Allen Kay, against The Pennsylvania Railroad Company. The writ was issued October 15th 1866 : the cause of action was the negligence of the defendants' servants, by which one of their cars ran over and crushed the arms of the plantiff, a child of 19 months old, so as to require amputation ; the injury occurred on the 3d of July 1864.

The facts of the case, so far as is necessary for the understanding of the questions decided, are found in the opinion of Mr. Justice Agnew.

The defendants asked the court to charge :—

1. That as the plaintiff has shown that there was no public street or crossing at the point where the accident occurred, and as she has also shown that all of the land on which the track is located, and in the vicinity thereof, belonged to the Northern Central Railway Company, and was in the exclusive use and occupancy of the defendant, by an arrangement between the companies, and was used for·the purpose of loading and unloading lumber; the fact that people walked upon the tract or drove teams upon the ground, gave neither to the public, nor to the plaintiff, any rights upon the track, and did not make the land and the track a "public common," and as the only count in the declaration charges that the accident occurred at a "public common, street or highway," the plaintiff has failed to make out her case.

2. That as the parents of the plaintiff resided for three months alongside of the railroad track, it was their duty to see to the safety of the little child, the plaintiff; and as she was but nineteen months old at the time of the accident, and was not at the time in charge of any one, she was upon the track by the culpable violation of their duty by her parents, and the plaintiffs cannot recover.

3. That the defendant had a right to presume that the track was clear at the time and place where the accident occurred, and to act upon that presumption; and as there was no cause, as shown by the evidence in this case, for apprehension, the failure to place a brakesman as a precautionary measure on the car that produced the accident, was not a duty, and therefore not negligence on the part of the defendant.

4. That as the use of a railroad track, cutting or embankment is exclusive of the public everywhere except where a way crosses it, and as is shown by the evidence, no public road, street or way crossed the railroad track at or near the place where the injury complained of in this case occurred, the rights of the defendant were exclusive and the plaintiff cannot recover, she being unlawfully on the track.

To which the court (Gamble, P. J.) answered :—

"The foregoing points on the part of the defendant are severally

[Kay v. Pennsylvania Railroad Co.]

answered in the negative for the present, reserving however, the right to enter judgment for the defendant, *non obstante veredicto*, if the court should be satisfied after verdict that the plaintiff has no legal right to recover, and that these points or any of them asking such instruction should have been affirmed."

The judge also charged, that the damages to be recovered should be limited in pursuance of the Act of Assembly of April 4th 1868, section 2 (Pamph. L. 58, Purd. 1521, pl. 2,) to $3000. The verdict was rendered in the absence of the president judge for $8000.

Judgment was afterwards entered on the reserved points for the defendants, *non obstante veredicto*.

This the defendants assigned for error, on the removal of the case to the Supreme Court.

*W. H. Armstrong* and *S. Linn*, for plaintiffs in error.—It is admissible in an action against a railroad company to prove negligence in their servants: 1 Redfield on Railways 552 *et seq.* Negligence is a question for the jury: Pierce on Railroads 282; Huyett v. The Railroad Company, 11 Harris 373; Railroad Company v. Doak, 2 P. F. Smith 379; Shearman and Redfield on Negligence 9, 10 and note 2; P. & R. Railroad Company v. Spearen, 11 Wright 300; Frankford & B. Turnpike v. Phila. & Trenton Railroad, 4 P. F. Smith 350. A child will not suffer from the parents' neglect: Smith v. O'Connor, 12 Wright 218; Rauch v. Lloyd, 7 Casey 358; Penna. Railroad v. Kelley, Id. 372; Mangam v. Brooklyn Railroad, 36 Barbour 230; Shearman and Redfield on Negligence, § 48–52; Chiles v. Drake, 2 Metc. (Ky.) 149. Under the allowance of a way across their track, the defendants were bound to use reasonable care; and this was for the jury: Barrett v. Midland Railway Co., 1 Foster & Finl. 361; Reg. v. Broke, Id. 514; Bateman · v. Bluck, 18 Q. B. 870; Glenn on Highways 135; British Mus. v. Finnis, 5 C. & P. 460. The cause of action arose July 1864; the Act of 1868 could not divest it: Const. U. States, Art. 1, § 10; Const. Penna. Art. 9, § 11, 17; Bedford v. Shilling, 4 S. & R. 401; Dash v. Van Kleck, 7 Johns. 477; Tillman v. Lansing, 4 Id. 45; Kenyon v. Stewart, 8 Wright 192; Gordon v. Inghram, 1 Grant 152; Jackson v. Lamphire, 3 Peters 280; Dartmouth College v. Woodward, 4 Wheaton 518; Green v. Biddle, 8 Id. 1; Bronson v. Kinzie, 1 Howard 311; McCracken v. Hayward, 2 Howard 608; Hedges v. Rennaker, 3 Metc. (Ky.) 258; Thorn v. St. Francisco, 4 Cal. 127; Nelson v. Jefferson, 13 Iowa 181; Smith's Const. Law, § 366, and cases cited, § 149 *et seq.*; Sedgwick on Stat. and Const. Law 413.

*H. C. Parsons* and *H. T. Beardsley*, for defendants in error.—

[Kay *v.* Pennsylvania Railroad Co.]

As to the plaintiff being chargeable with the parents' negligence, Rauch *v.* Lloyd, 7 Casey 371; Shearman & Redfield on Negl. 51; Balfour *v.* Baird, 30 Jur. 124; Railroad *v.* Spearin, 11 Wright 303; Railroad *v.* Hummel, 8 Id. 377.

The opinion of the Court was delivered, May 5th 1870, by

AGNEW, J.—In giving judgment for the defendants *non obstante veredicto*, the learned judge took the question of negligence away from the jury. He did this by deciding that the railroad company was in the lawful use of its track, and that the plaintiff was a trespasser. This left out of view two aspects of the case to be found in the evidence—the public use of the ground permitted by the company, and the manner of the accident. The ground was a large open lot traversed by railroad sidings and a canal basin. It was leased by the defendants from another railroad company which used it for the purpose of piling and loading lumber; the railroad tracks and canal basin being nearly parallel and in close proximity. The lot lay in Williamsport, adjacent to large saw-mills, where an immense lumbering business is done. In consequence of this business, teams were crossing the lot, and hands engaged in handling the lumber, and the public were permitted to pass to and fro upon it, and along the track where the accident happened a well-worn foot-path was plainly visible. Children were often to be found there. The siding upon which the plaintiff was injured left the main lumber track and followed the bend of the canal basin, curving considerably at this point. The plaintiff, a child but nineteen months old, lived with her parents in a small shanty on this lot, occupied without objection by the railroad company, and lying between the main track and siding, at about one hundred and forty-two feet from the place of the accident. The injury took place about eight o'clock in the morning of a summer day, and was caused by detaching a lumber car, propelled in advance of the engine, and sending it around the curve in the siding, on a slight down grade, unattended by a brakesman. After running over the child the car was carried by its own momentum about one hundred and seventy feet beyond the place of injury. At the point on the main track where the car was detached from the engine to run through the opened switch out upon the siding, the siding where the child was injured was not visible to the engineer or conductor on the engine, in consequence of the curvature of the track along the canal basin, and of intervening piles of lumber. The parents of the child were poor, and the mother was employed that morning in washing for herself and others. She had gone out over the track to the canal for water, carrying the child on her arm and the bucket in her other hand. Returning she set the child down before a chair with some sugar placed upon it, and engaged again in washing.

[Kay v. Pennsylvania Railroad Co.]

In three or four minutes she missed the child, which had passed out unobserved. She ran out, called the child, ran around the house and met the conductor carrying the child in his arms. Both of its arms were crushed and had to be amputated. This is a concise statement of the case on part of the plaintiff.

Conceding the right of the railroad company to the exclusive use of its tracks over the lot, as the learned judge held; the true question is whether the circumstances created a different duty. The ownership of the lot gave to the company the right to use it as most convenient and expedient in moving its cars; and no one can gainsay the right to detach and send cars ahead without a brakesman, even out of sight and around a curve. But the case is altered when, by a license to others, they have devoted this ownership to a use involving their interests and their safety; and by sufferance permitted the public to enjoy a privilege of passage which might bring their persons into danger. Duties grow out of circumstances, the authorities tell us, and that which in one case would be an ordinary and proper use of one's rights may, by a change of circumstances, become negligence and a want of due care: Reeves v. Del. L. and W. Railroad Co., 6 Casey 461; Phila. and Read. Railroad v. Spearin, 11 Wright 305; Smith v. O'Connor, 12 Id. 222; F. and M. Turnpike Co. v. Phila. and Trenton Railroad Co., 4 P. F. Smith 350; Shearman & Redfield on Neg., § 11. Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do under all the circumstances surrounding the particular case: Shearman & Redfield on Neg., § 7. In many cases the law gives no better definition of negligence than the want of such care as men of ordinary prudence would use under similar circumstances: Id., § 11. If, therefore, an owner of property has been accustomed to allow to others a permissive use of it, such as tends to produce a confident belief that the use will not be objected to, and therefore to act on the belief accordingly, he must be held to exercise his rights in view of the circumstances so as not to mislead others to their injury, without a proper warning of his intention to recall his permission: Barrett v. Midland Railway Co., 1 Foster & Finlason 361; Bateman v. Bluck, 18 Q. B. 870. Notice, says Rogers, J., is required to a man who acts bonâ fide, not to him who wilfully and obstinately persists in using that to which he has no title or pretence of title: Hepburn v. McDowell, 17 S. & R. 384. Persons who use their property, so as to hold forth an invitation to others to enter, give a license to do so, for instance, innkeepers, merchants, &c. Even trespasses will ripen into right by sufferance and lapse of time, as a way used for twenty-one years. And a parol license accompanied with an

15 P. F. SMITH—18

[Kay *v.* Pennsylvania Railroad Co.]

expenditure of money will estop without lapse of time: Lefevre *v.* Lefevre, 4 S. & R. 241; Rerick *v.* Kern, 14 Id. 267. Toleration is therefore not to be overlooked in testing a man's right to the use of his property.

In the present case the railroad company, for the benefit of trade resulting to its own profit, built its tracks along the canal basin, and left its lot open for the convenient access of the public in the handling of lumber, and transferring it to the cars upon its tracks. And the lot being thus open to all engaged in that business, it also suffered its tracks to be used by the neighboring population as a way across the lot from one part of the city to another. As a consequence, people passed and repassed upon the tracks, and the company and its servants would be led to expect to find them there at nearly all hours of the day. It is not like those portions of the road used solely for the passage of trains, where the company would have not only a right to demand, but reason to expect a clear track. But the presumption of a clear track at this place could not reasonably arise if the circumstances were such as have been stated. A greater precaution against injury to those thus permitted to use the lot and the tracks of the company became a duty.

This brings us to inquire into the particular conduct which led to the injury of the plaintiff; and whether it was a prudent and proper use of the track to detach and send the unattended car forward in the manner stated? It seems to us it was negligence. Certainly no prudent, reasonable and honest-minded man could think it unattended with danger to persons liable thus to be found on the track to send a car out of sight around a curve on a down grade, uncontrolled and unattended by any one capable of checking it in case of danger. Its only purpose was to save a few hundred feet of travel to the engine by detaching it from the car when in motion, and stopping the engine before it reached the switch, in order to permit it to run forward on the main track to hitch on to other cars. To save this short time and distance a life was perilled and a serious injury inflicted. Whether the conduct of those in charge of the engine and car was negligence or not was therefore a question for the jury and not for the court, for it involved the finding of the facts on which the duty of care depended. It is the province of the court to instruct the jury upon the principles which must guide their conclusions. But the question of negligence is one of mingled law and fact. The law imposes the duty according to the circumstances, so that negligence, which is the breach of that duty, must necessarily depend on the facts, and they can be found only by the jury: Huyett *v.* Railroad Co., 11 Harris 373; Railroad Co. *v.* Spearin, 11 Wright 305; Smith *v.* O'Connor, 12 Id. 218; Railroad Co. *v.* Doak, 2 P. F. Smith 381; Shearman & Redfield on Neg., § 11.

[Kay *v.* Pennsylvania Railroad Co.]

But the learned judge in the court below rested his conclusions as to negligence chiefly on the decisions in Phila. & Read. Railroad Co. *v.* Hummel, 8 Wright 375, and Gillis *v.* Penna. Railroad Co., 9 P. F. Smith 129. We think he mistook their effect. The Railroad Co. *v.* Hummel was not like this case. There the siding on which the injury took place ran over the lands of others, and was not the subject of any permissive use. The railroad company had paid for its right of way, and had a clear right to a free track which they had not yielded up or modified by any act of their own. The train of coal cars was lawfully standing on the track ready to be moved, and the conductor had gone along the cars to examine the couplings and couple those that had been uncoupled, and if any persons were in the way of the cars to drive them off. The plaintiff was a boy seven years old. The only witness who saw him at the time testified' that he saw him having hold of the cars and running along with them; that the cars had moved about three yards slowly when he saw the boy under the cars, and signalled the conductor who stopped the train, jumped from the locomotive, picked up the boy and carried him to his father's house. There was no proof of the slightest negligence on part of the company, and the only question was how far the railroad company owed the surrounding population a duty to signal them before the starting of the train. Eight of the lots occupied by dwellers there were cut in two by the track, and the owners had no way to the back parts of the lots except by crossing the track. The neighborhood was thickly settled, and it was contended these circumstances imposed a duty on the company to take care that no one was injured there, and the negligence alleged was the neglect to whistle. Judge Strong's opinion opens by saying there is but a single question in the case—whether any evidence was given tending to prove that the hurt of the plaintiff was caused by the negligence or want of ordinary care of the defendants. He then proceeds to show that there was none, and that the blowing of the whistle, or signalling the starting of the cars on the track, was not a duty to the people in the neighborhood. The company's track there was exclusively for their own use. "Precaution;" he says, "is a duty only so far as there is reason for apprehension;" and this is the very feature in which that case is distinguished from this.

Nor is Gillis *v.* Railroad Co. any more applicable. That case was well decided on its circumstances, but its principle does not touch this case. The precise ground on which the decision is rested is that the railroad company had done nothing to invite the public upon the platform that gave way, and therefore no duty lay on them to maintain such a structure as would support the dense crowd, that out of curiosity perilled their persons upon it. The platform was in no sense a public way, but was erected for the accom-

[Kay *v.* Pennsylvania Railroad Co.]

modation of passengers arriving and departing in the train. Though it was open, and a general permission to pass over, yet the plaintiff had no legal right there, and his presence was in no wise connected with the purposes for which the platform was erected. He was there merely to enjoy himself and gratify his own feelings, and by no act of the company. But Sharswood, J., proceeds to say : " Had it been the time for the arrival or departure of the train, and he had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by authority of defendants, as much as if he was actually a passenger, and it would then matter not how unusual might have been the crowd, the defendants would have been responsible. As to all such persons to whom they stand in such a relation as required care on their part, they were bound to have the structure strong enough 'to bear all who could stand upon it. As to all others they were liable only for wanton or intentional injury." Thus in Gillis *v.* Railroad Co., it will be seen that the negligence alleged was purely of a negative character, in omitting to keep up a structure sufficient to bear the weight of a crowd unexpectedly and exceptionally gathered upon it, for their own curiosity, and for no purpose connected with the use of the railroad. But in the present case the negligence charged consisted of a positive act of carelessness, in sending a car around a curve out of sight, on a descending grade, at a place where persons might be expected to be, from the permissive use suffered by the company. It was the duty of the court therefore to have submitted the facts to the jury for their determination, whether there was negligence or not.

The next question is upon the responsibility of a child nineteen months old for contributory negligence. That question has been settled in this state by the cases of Rauch *v.* Lloyd & Hill, 7 Casey 358; Penna. Railroad Co. *v.* Kelley, Id. 372 ; Philadelphia and Reading Railroad Co. *v.* Spearin, 11 Wright 304 ; and Smith *v.* O'Connor, 12 Id. 218. In accord with these cases are Lynch *v.* Nurdin, 1 A. & E. (41 Eng. E. L.) 422 ; Bridge *v.* Gardiner, 19 Conn. 507 ; and Robinson *v.* Bove, 22 Vermont 213. Where the injury is caused by the actual negligence of the company, the incapacity of a child of this age to know the danger and to avoid it, shields it from responsibility for its acts. If there be no negligence on the part of the company, then the incapacity of the child creates no liability, and its injury is its own misfortune, which it must bear. This doctrine is explained and illustrated in Railroad Co. *v.* Spearin, *supra*, and is discussed in Smith *v.* O'Connor, *supra*. The doctrine which imputes the negligence of the parent to the child in such a case as this, is repulsive to our natural instincts, and repugnant to the condition of that class of persons who have to maintain life by daily toil. It is not the case where the positive act of a parent or guardian has placed a child

[Kay v. Pennsylvania Railroad Co.]

in a position of danger, necessarily requiring the care of the adult to be constantly exercised, as where a parent takes a child into the cars, and by his neglect suffers it to be injured by straying off upon the platform. But here a mother toiling for daily bread, and having done the best she could, in the midst of her necessary employment, loses sight of her child for an instant, and it strays upon the track. With no means to provide a servant for her child, why should the necessities of her position in life attach to the child, and cover it with blame? When injured by positive negligence, why should it be without redress? A negligent wrong is done; it is incapable of contributing to it—then why should the wrong not be compensated?

The last question to be noticed is the measure of damages. The jury found a verdict of $8000, on the ground of gross negligence. But the court charged that no more than $3000 could be recovered, by reason of the limit in the Act of 4th April 1868, Pamph. L. 58.

On the next trial the same question will arise, and we are bound therefore to say that this law is retrospective in its operation on this case, deprives the plaintiff of a vested right, and is inoperative. By the 11th section of the 9th article of the Constitution every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. This article is declared to be excepted out of the general powers of government, and shall for ever remain inviolate. When this injury happened in 1864, a right to recover full compensation to the extent of the damage suffered vested in the plaintiff. She commenced suit in 1866. Evidently the legislature could not, by a retrospective act in 1868, declare that an injury to the extent of $8000 should be compensated with the sum of $3000. This is a flat denial of a right and a refusal to administer justice. The law of the case at the time when it became complete is an inherent element in it, and if changed or annulled the right is annulled, justice is denied, and the due course of law violated. So this court said in Menges v. Dentler, 9 Casey 498. The authorities cited by the plaintiff in error run to the same conclusion. As to cases happening after the passage of the law, we express no opinion. For these reasons the judgment is reversed, and a *venire facias de novo* is awarded.

SHARSWOOD, J., dissented on the authority of Railroad Co. v. Hummel, 8 Wright 375.