Karen R. Brungard, Plaintiff *v.* John A. Hartman et al., Defendants.

Argued March 21, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE, CRAIG and MAC-PHAIL.

*Richard Z. Freemann, Jr.,* with him *Bonnie S. Brier,* and, of counsel, *Roger V. Wiest; Wiest & Wiest;* and *Ballard, Spahr, Andrews & Ingersoll,* for plaintiff.

*Jered L. Hock,* with him *Metzger, Wickersham, Knauss & Erb,* for defendant, John A. Hartman.

*J. Justin Blewitt, Jr.,* Deputy Attorney General, and *Bruce A. Krain,* Deputy Attorney General, with them *Norman J. Watkins,* Deputy Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for defendants, Mansfield State College and Commonwealth.

OPINION BY JUDGE ROGERS, September 14, 1979:

Karen R. Brungard filed a complaint in trespass in this Court against Mansfield State College and John A. Hartman, a chemistry professor at Mansfield, in which she alleged that she was injured by an explosion in a classroom resulting from the College's and Professor Hartman's negligence. We dismissed the counts of the complaint against Mansfield State College on the ground of the State's sovereign immunity and those against Professor Hartman on the ground of his immunity as an official of the Commonwealth from liability except for acts maliciously, wantonly or recklessly done—conduct not ascribed to Professor Hartman in the complaint.[1] The Pennsylvania Supreme Court vacated our order dismissing the complaint against Mansfield State College based on its decision in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), and vacated our order dismissing the complaint against Hartman and remanded for consideration in light of all the principles enunciated in *DuBree v. Commonwealth of Pennsylvania*, 481 Pa. 540, 393 A.2d 293 (1978).[2]

(I) The Complaint Against the Commonwealth— Sovereign Immunity.

In *Mayle, supra,* decided on July 14, 1978, the Supreme Court abrogated the doctrine of sovereign immunity in Pennsylvania. The General Assembly in specific response to, and expressly in order to prescribe limitations on *Mayle, supra,* then enacted the Act of September 28, 1978, P.L. 788 (Act 152), effective immediately, making amendments or additions to the new Judicial Code of Title 42 Pennsylvania Con-

---

[1] *Brungard v. Hartman*, 12 Pa. Commonwealth Ct. 477, 315 A. 2d 913 (1974).

[2] *Brungard v. Hartman*, 483 Pa. 200, 394 A.2d 1265 (1978).

solidated Statutes and to General Provisions, Title 1 Pennsylvania Consolidated Statutes.[3] The General Assembly there waived, with monetary limitations, sovereign immunity as a bar to actions against Commonwealth agencies and their officials and employees for damages arising out of negligent acts or omissions with respect to eight categories, or as the Act calls them, instances, of claims, to wit, vehicle liability; medical-professional liability; care, custody or control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous conditions; care, custody or control of animals; liquor store sales; and national guard activity.[4] The Act provides with respect to these eight categories of claims that the waiver of immunity shall be effective as to all actions whenever accrued; that is, that the waiver shall have retroactive effect. It further expressly provides, however, that the waiver shall extend only to the eight categories of claims,[5] and that sovereign immunity shall continue as a defense to all actions which had accrued before the effective date of the Act and which are not within any of the eight categories of claims in which immunity was waived.[6]

Karen Brungard's claim does not fall within any of the categories of claims as to which the Commonwealth's immunity has been waived. The accident in which she was injured occurred November 10, 1970 and she commenced her suit on November 9, 1972. Act 152 thus expressly declares that her action against Mansfield College, that is, the Commonwealth, is barred by sovereign immunity.

---

[3] At this writing, Act 152 is to be found at Pamphlet 6, Purdon's Pennsylvania Legislative Service 1978, Page 629. Section 5(a) of the Act declares it to be in response to and in limitation of *Mayle, supra.*

[4] 42 Pa. C.S. §5110(a).

[5] 42 Pa. C.S. §5101(b).

[6] Section 5(b)(1) of Act 152.

We must mention that we are mindful that the Supreme Court simply vacated our order dismissing the plaintiff's complaint against Mansfield College and remanded. In contrast to this action, it vacated our order dismissing the complaint against Hartman and remanded for consideration in light of the principles enunciated in *DuBree*. The possibility that consideration by us of the effect of Act 152 on the claim against Mansfield College might be thought to be an act of lése majesté has not escaped us. However, the Commonwealth and Hartman and the defendants in other similar cases remanded by the Pennsylvania Supreme Court are pressing the bar of Act 152 and it seems to us that the best interests of the litigants would be served by our deciding this matter now. Further, no objection has been raised by the plaintiff to our doing so.

The Commonwealth has invoked sovereign immunity declared by Act 152 as a bar to the plaintiff's claim. The plaintiff says that her claim, which she variously describes as "a vested cause of action" or "a vested right to sue"[7] or "a property interest," is one which the General Assembly could not "under constitutional and common law . . . destroy through retroactive legislation." She depends on the due process clause of the 14th Amendment of the United States Constitution, Article I, Section 9 of the Pennsylvania Constitution,[8]

---

[7] Cause of action and right of action have the same meaning. *Alpha Claude Neon Corporation v. Pennsylvania Distilling Company, Inc.*, 325 Pa. 140, 188 A. 125 (1936). In the case of a tort, the cause or right of action is the negligent act or acts which occasioned the injury. *Smith v. Fenner*, 399 Pa. 633, 641 n.2, 161 A.2d 150, 154 n.3 (1960).

[8] Article I, Section 9 provides pertinently that no one "can be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." The provision has been held to proscribe retroactive legislation taking property from one private person and transferring it to another, with or without compensation. *Palairet's Appeal*, 67 Pa. 479 (1871).

and on a line of cases which declare that the constitutional provisions mentioned do protect certain rights from destruction by retroactive State action. In *Ettor v. City of Tacoma,* 228 U.S. 148 (1912), an abutting owner's right to consequential damages for street grading existing by statute at the time the work was done was held to be a vested property right which was protected from destruction by the repeal of the statute after the damage was done. The Supreme Court concluded that the repealing act deprived the property owner of his right to enforce a fixed liability and thus of a right which was in every sense a property right. The appellant boat operator in *Forbes Pioneer Boat Line v. Board of Commissioners,* 258 U.S. 338 (1922), had been unlawfully required to pay tolls to use a canal lock and sued to recover the payments. On the same day it got judgment, the State Legislature passed an act which purported to validate the collection. The Supreme Court held that the state could not by legislation constitutionally take from a private party a right to recover money due when the enactment was passed. In *Kay v. Pennsylvania Railroad,* 65 Pa. 269 (1870), the Supreme Court of Pennsylvania held that an Act of Assembly which retrospectively to the time of injury placed a limitation on the extent of compensation recoverable against a railroad enterprise was invalid as offensive to the then due process clause of the state constitution. The court declared that the injured plaintiff had a vested right in his claim without the limitation. In *Lewis v. Pennsylvania Railroad,* 220 Pa. 317, 69 A. 821 (1908), the Pennsylvania Supreme Court held that a repealer could not deprive the defendant of a statutory exemption from liability existing at the time the cause of action accrued. In *Rebel v. Standard Sanitary Manufacturing Co.,* 340 Pa. 313, 16 A.2d 534 (1940), it was held that a worker who claimed that he contracted an occupational disease as the result of an employer's

failure to comply with an Act of Assembly requiring safety devices could not be deprived of his vested right to recover by repeal of the act.

Of course, the cases just referred to are absent the crucial circumstance present in this case that the defendant is a state in which, at the time of the events constituting the plaintiff's cause or right of action, the doctrine of sovereign immunity, both as a common law principle and by constitutional limitation,[9] was in full force and effect. The circumstance is crucial because decisions before and after November 1970, when the instant plaintiff was injured, invoke the bar of sovereign immunity in terms which clearly negate the possession by the plaintiff of any right or interest whatsoever, much less the vested cause of action, the vested right of action or the property interest to which plaintiff here lays claim. In *Collins v. Commonwealth*, 262 Pa. 572, 106 A. 229 (1919), the Pennsylvania Supreme Court said that the Commonwealth ''cannot be sued'' for a tort of its employee. In *Merchants' Warehouse Company v. Gelder*, 349 Pa. 1, 36 A.2d 444 (1944), it was said that the absence of the Commonwealth's consent to being sued would cause there to be ''no forum'' for the claim sued on. In *Meagher v. Commonwealth*, 439 Pa. 532, 266 A.2d 684 (1970), decided a few months before the accident in which the plaintiff here was injured, the Pennsylvania Supreme Court affirmed an order of the trial court sustaining a demurrer to the plaintiff's complaint in trespass, with the observation that it failed to state a claim upon which relief could be granted because it was directed against the Commonwealth. In *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973), the Pennsylvania Su-

---

[9] Article I, Section 11, which provides in part: "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

preme Court referred to the effect of the bar of the state's immunity as creating the result "that no suit may be maintained against the state in tort."

It is manifest that the plaintiff, who as the cases just referred to say, could not sue, was without a forum, was unable to state a claim upon which a relief could be granted and could not maintain a suit, was not possessed of any vested cause of action, vested right of action or other interest entitled to the protection of the constitutional provisions she invokes. Not only the terms in which the doctrine, until abrogated in *Mayle, supra,* was described, but practice, demonstrated that a claim against the State founded in tort was a nullity. Suits asserting such were dismissed upon preliminary objections in the nature of a demurrer for failure to state a cause of action. It can therefore be truly said that there was no cause of action or right of action against the state.

The plaintiff has not therefore carried the heavy burden laid upon all suitors so asserting, of demonstrating that the legislation complained of clearly, palpably and plainly violates the constitution. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975).

Our holding is in agreement with those made by other courts which have considered the issue. In *Palmer v. Penn-Ohio Road Materials, Inc.,* 462 F. Supp. 312 (W.D. Pa. 1978), the plaintiff made the same claim of a vested right arising out of a pre-*Mayle,* pre-Act 152 injury as that made here. The Court held that the plaintiff had no cause of action on the date of the injury, so that none was abrogated. After the Supreme Court of California held in *Muskopf v. Corning Hospital District,* 359 P.2d 457 (1961), that governmental immunity could not be invoked as a defense to actions to receive damages for injuries resulting from torts of public employees, the California Legislature enacted moratorium legislation and

thereafter comprehensive laws dealing with governmental immunity. This legislation retroactively affected the claim of Shirley M. Hawley against the County of Los Angeles for injuries allegedly resulting from the negligence of County employees. In *County of Los Angeles v. The Superior Court of Los Angeles,* 402 P.2d 868 (1965), the California Supreme Court was faced with Mrs. Hawley's contention that the legislation could not be retroactively applied to her claim and, by Chief Justice TRAYNOR, disposed of it in the following fashion:

Mrs. Hawley contends, however, that the 1963 legislation cannot be applied retroactively to restrict the county's liability under Muskopf. She contends that although the Legislature can retroactively abrogate rights provided by statute, it cannot retroactively change the common law to abrogate a 'vested right'. . . . We find no constitutional basis for distinguishing statutory from common-law rights merely because of their origin . . . , and describing a right as 'vested' is merely conclusory. . . . We must consider instead the reasons advanced to justify retroactive application of a statute to determine if it is constitutionally permissible. Although the Legislature normally legislates prospectively, it can provide for retroactive application of a statute if it has a reasonable basis for doing so. Here, the Legislature responded to this court's abrogation of the common-law doctrine of governmental immunity by enacting comprehensive legislation to govern the liability of public employees and public entities. It expressly made the legislation retroactive 'to the full extent that it constitutionally can be so applied' . . . to place all potential plaintiffs whose claims are not barred by the statute of limitations on

an equal footing. Retroactivity also serves to clarify the fiscal responsibilities of public agencies following the abrogation of governmental immunity, thus preventing the uncertainties that would result if the scope of their liability were left to case-by-case resolution in the courts.

It is not unfair to apply the statute retroactively. Potential plaintiffs who were injured before the Muskopf case was decided clearly could not have relied on that case. . . . Moreover, it is purely speculative to assume that other potential plaintiffs would have protected themselves in some way during the period between the Muskopf decision and the moratorium legislation had they foreseen statutory modification of that case. Indeed, to hold that the Muskopf case created vested rights that could not be abrogated by the 1963 legislation would create a special class of favored plaintiffs: those who had causes of action that were not barred by the statute of limitations at the time of the Muskopf decision but that would be barred by the 1963 legislation. Such a holding would give unlimited retroactive effect to the Muskopf case and no retroactive effect to the 1963 legislation. The Legislature, as well as the court, however, is competent to define the retroactive scope of an overruling decision. . . . If it adopts a reasonable solution to the problems created by such a decision, as it has done here, its determination will be upheld.

402 P.2d at 871-72.

Section 5(b) of Act 152 in somewhat inflated terms states the same reason as that offered in the California statute for its retroactive application—the purpose to put potential claimants on an equal footing

regardless of the fortuities attending their litigation or the diligence with which they pursued it. Every other point made in the portion of Chief Justice TRAYNOR's opinion just quoted seems to us to be of application to this identical Pennsylvania case.

The plaintiff has not argued that the *Mayle* decision itself caused her right to vest or conferred upon her any right which she had not previously possessed. *Mayle, supra,* in sum, held that sovereign immunity insofar as its origins lay in Pennsylvania judicial decisions, had been wrongly espoused; and that insofar as it could be said to rest on the Pennsylvania Constitution, had been based on a misinterpretation of Article I, Section 11 of that document. The Pennsylvania Supreme Court, as it had the power to do because the rule of law was court-made, simply abrogated the rule. Nothing in the opinion of the Court, however, suggests that the General Assembly could not, if it chose, thereafter change the law there propounded. Indeed, in reference to the provision of Article I, Section 11 authorizing suits against the Commonwealth in such courts and cases as the legislature shall direct, Mr. Justice ROBERTS wrote for the Court that "[t]here is no evidence that this sentence was added to make sovereign immunity the constitutional rule *unless the Legislature decides otherwise."* (Emphasis supplied.) 479 Pa. at 402, 388 A.2d at 717-18. Further, as we have seen, *Lewis v. Pennsylvania Railroad, supra,* holds that a defendant has a right in a statutory defense existing at the time of the plaintiff's cause of action accrued which could not constitutionally be retroactively destroyed by repeal of the statute. We would not be inclined to conclude that the Pennsylvania Supreme Court intended by *Mayle* to do to the Commonwealth's defense of immunity what the Legislature by statute could not lawfully do to one private citizen's existing defense to another's claim.

Even were we to believe that *Mayle* was meant to have retroactive effect, such a holding, and indeed any other effect of *Mayle* inconsistent with Act 152, would be thereby effectively overruled. *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470 (3rd Cir. 1978), which so holds, is directly on point.[10]

In *Singer v. Sheppard, supra,* the Pennsylvania Supreme Court declared that no one has a vested right in the maintenance of the status quo of the common law torts and commented with respect to a contrary rule as follows:

However, the practical result of such a conclusion would be the stagnation of the law in the face of changing societal conditions. In 1876, in Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77, the United States Supreme Court recognized that due process was not violated when legislative action modified the common law. The Court ruled:

---

[10] We deem it appropriate to observe that United States Supreme Court decisions dealing with the application, or not, of newly enunciated principles of constitutional law to other pending cases are not applicable here. *See Linkletter v. Walker,* 381 U.S. 618 (1965) ; *Mackey v. United States,* 401 U.S. 667 (1971) ; *Hankerson v. North Carolina,* 432 U.S. 233 (1977) ; *Harlin v. Missouri,* U.S. , 99 S. Ct. 709 (1979). In those, the Supreme Court was concerned with what effect new principles of its own creation should have upon other pending cases. Here we have a change of Pennsylvania law regarding sovereign immunity made by the Pennsylvania Supreme Court followed by an Act of Assembly expressly and with direct reference to the change declaring that it shall not apply to pending cases, except those described in the Act. Nothing in the United States Supreme Court opinions in the cases cited suggests that the court would not have considered itself bound by the provisions of an Act of Congress directly relating to the subject. It is clear that the issue of retroactivity, or not, of a new principle of constitutional law is not itself a constitutional issue. *Linkletter v. Walker, supra.*

'A person has no property, no vested interest, in any rule of common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; *but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to changes of time and circumstances.*' (Emphasis added.)

464 Pa. at 399, 346 A.2d at 903.

Act 152 controls. Since the plaintiff's cause is not within any of the eight categories of claims as to which the General Assembly retroactively waived immunity and is therefore a claim as to which the General Assembly has retroactively asserted immunity, we are compelled to sustain the Commonwealth's demurrer.

II. The Complaint against Professor Hartman.

Professor Hartman filed preliminary objections to the complaint in the nature of a demurrer on the ground that the complaint by failing to allege that his assertedly negligent conduct was wanton, malicious or reckless failed to state a cause of action. As earlier noted, we sustained this objection and dismissed the complaint as to Professor Hartman in 1974.[11] In *Opie v. Glascow, Inc.*, 30 Pa. Commonwealth Ct. 555, 375 A.2d 396 (1977), we held that for purposes of our original jurisdiction of suits against officers of the

---

[11] *See* note 1, *supra*.

Commonwealth provided for in Section 401 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.401,[12] the term ''officers of the Commonwealth'' meant only persons who perform state-wide policy making functions and who are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government; and that jurisdiction of suits against officers or employees of the Commonwealth not fitting that description lay with appropriate common pleas courts. Professor Hartman is clearly not an officer of the Commonwealth for purposes of our jurisdiction of this complaint against him so that we must transfer the complaint against him to the Common Pleas Court of Bradford County. In so doing, we direct that Court's attention to our case of *Estate of Tanya Carlissa Armstrong v. Pennsylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979), where we declared that despite the enactment of Act 152 retaining the traditional common law rules concerning official immunity seven days before the Supreme Court's decision in *DuBree, supra*, the new principles enunciated in *DuBree* are nevertheless to be applied.

## ORDER

AND Now, this 14th day of September, 1979, the preliminary objection in the nature of a demurrer of Mansfield State College (the Commonwealth) is sustained and the complaint against Mansfield State College is dismissed.

With respect to the complaint against Professor Hartman, the record is transferred to the Court of Common Pleas of Bradford County for disposition

---

[12] Now at 42 Pa. C.S. §761(a)(1).

of the preliminary objections of John A. Hartman to the complaint in the light of all the principles enunciated in *DuBree v. Commonwealth of Pennsylvania*, 481 Pa. 540, 393 A.2d 293 (1978).

---

CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

Conceived in the Dark Ages, born and bred in Toryism, flourishing for over two centuries by judicial servility to stare decisis and by legislative inertia and so recently interred,[1] the "mystery of legal evolution" was resurrected and this Court today deprives Karen Brungard of her day in Court.

The Supreme Court, faced with a doctrine repugnant to the integrity of human nature and natural justice directly conflicting with the guarantees dictated by our political founders in our constitution, at last reinforced our unalienable right and ended the reign of this erroneous medieval defense.

Pennsylvania citizens, "grateful to Almighty God for the blessings of civil and religious liberty," had constitutionally bedrocked the "great and essential principles of liberty and free government" by declaring the inherent rights of mankind among which is remedy by due course of law in courts opened equally to all citizens for harm to person, reputation, lands or goods.

These guarantees assured the birthright of every man, woman and child to personal dignity and integrity free from unwarranted or careless assaults. These rights, explicit in natural law and eternally preserved in our declaration of rights, are inherent and indefeasible. Sadly, they are at times taken for grant-

---

[1] *Mayle v. Pennsylvania Department of Transportation*, 479 Pa. 384, 388 A.2d 709 (1978).

ed but they are omnipresent and without them the pyramidal political structure of the New World democratic republic would collapse.

In chipping away these rights using the tool of unfounded dogma, heirs to the founders, like Karen Brungard, were effectively denied redress of wrongs. There is no foundation in American history, law, equity, reason or policy,[2] in the concept of an immune sovereign yet, despite the absence of legislative direction, judicial fiat arbitrarily eliminated a forum for the redress of violated rights.

In *Mayle*, the defense was exposed as an archaic concept, unconstitutionally imposed by the judiciary. *Mayle*, in dissecting the doctrine, traces the rights inherent in the citizens to a situation where the rights reside with the state. The Court recognized that the right to obtain legal redress from the state existed from the creation of the Commonwealth. The right never erased was compromised by judicial interposition of a mythical defense. *Mayle*, recognizing the continuity of the shrouded right, abolished sovereign immunity as a defense and called for a legislative action speaking for the citizens of this Commonwealth to legitimize this defense.

Following *Mayle*, the legislature promptly responded by formalizing the doctrine of sovereign immunity and providing limited waivers, Act of September 28, 1978, P.L. 788, Act No. 152-1978 (Act 152), amending the Judicial Code, 42 Pa. C.S. §§5510, 5511. My suppressed dissatisfaction with the scope of the waivers and my disagreement with the use of the concept is well known. I do, however, recognize that the judiciary may not substitute its social and economic beliefs for those of the legislature, whose function it is

---

[2] Sloan, "Lessons in Constitutional Interpretation: Sovereign Immunity in Pennsylvania," 82 Dick. L. Rev. 209 (1978).

to enact laws and that it may, in its wisdom, provide the defense of sovereign immunity. However, resurrection of the doctrine is not superior to the limitations imposed by the Federal and the Commonwealth Constitutions. The legislature's invalid attempt to do so by effectuating its directive retroactively and this Court's majority's willingness to afford Act 152 retroactive application prompts my dissent.

The judiciary stands guard against attacks on constitutional principles. It is in our inherent power and duty to determine the constitutionality of the legislation in question and to strike down any part of a statute which violates the rights of Pennsylvania citizens. I am of the opinion that Section 5(b)(1) of Act 152 which purports to confer retroactive application is unconstitutional.

As an incident of the *Mayle* decision, the order of this Court dismissing Brungard's complaint against Mansfield State College on the basis of sovereign immunity was vacated and the matter remanded for our consideration in light of the Supreme Court's pronouncements in *Mayle*. The effect of the Supreme Court's remand was to inform Brungard that at last her claim against the Commonwealth would be heard. Are we now to say that Brungard's right is again thwarted because the resurrected post-*Mayle* doctrine precedes this Court's consideration?

The majority says the "crucial circumstance" in Brungard's case is that the doctrine of sovereign immunity was in "full force and effect." However, this "crucial circumstance" somehow overlooks Brungard's right to access, absent legislative mandate, guaranteed by Article I, Section 11:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course

of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

It is true this right was decimated by a "wrongly espoused" defense, but undeniably the right existed. Brungard, recognizing her right, persistently pursued her cause to our State's highest tribunal. In *Mayle,* that Court made it clear that no longer would the inviolable right be obscured by the defense called sovereign immunity. It is indisputably evident to me that the timing of the incident did not affect the right of redress, for otherwise, her complaint would have been dismissed out of hand. By its remand order, the Supreme Court recognized that the right to continue to pursue her cause of action, free of the archaic restraint, was an inviolable constitutionally guaranteed right absent legislative directive. The right to a cause of action is a vested property right, *Commonwealth ex rel. Margiotti v. Cunningham*, 337 Pa. 289, 10 A.2d 559 (1940), which is constitutionally protected against retroactive state action. *Forbes Pioneer Boat Line v. Board of Commissioners*, 258 U.S. 338 (1922).

The General Assembly, in attempting to apply Act 152 retroactively, expressed its intent in the Act to "assure the development of a consistent body of law, an orderly and uniform management of litigation and to . . . prevent inequities within the terms of this act. . . ." These goals, while laudable and histrionic, need not and may not be accomplished by unconstitutional retroactive application.

At the risk of redundancy, I observe that in Article I, Section 11, access to our courts for redress of injury is a principle and a goal of this Commonwealth. We may not allow the legislature to rectify two centuries of inaction by permitting restoration of sov-

ereign immunity retroactively, so that it divests property rights.

Accordingly, I would afford Act 152 prospective application only. Karen Brungard has pressed her claim for redress for nearly a decade. Following the instruction of *Mayle*, we cannot now deny her her day in Court.

My analysis leads me to no other conclusion but to concur in the majority with respect to the complaint of Professor Hartman and dissent as to its resolution of the retroactivity provision of Act 152.

---

CONCURRING AND DISSENTING OPINION BY JUDGE DI-SALLE:

I respectfully dissent from that part of the opinion and order which sustains Mansfield State College's Preliminary Objections. While I might generally agree with the majority's treatment of the retroactivity issues, I believe that the facts of this case compel the opposite result with respect to Mansfield State College, and for the reasons herein given, would not reach those issues.

In light of the Supreme Court's order in *Brungard v. Hartman and Mansfield State College*, Pa. , 394 A.2d 1265 (1978), vacating our order dismissing Karen Brungard's complaint, and, citing *Mayle,* remanding for proceedings consistent with its opinion, I fail to see how Ms. Brungard can be treated differently than Mr. Mayle.

In *Mayle,* the Supreme Court, after abrogating the doctrine of sovereign immunity, reversed our order dismissing Mayle's complaint and remanded for further proceedings. The obvious effect of that action is that the case will be tried just as it would have been had sovereign immunity never existed. *Brungard* was argued before the Supreme Court at about the same

time as *Mayle* was, and indeed is specifically referred to in *Mayle* as a related case.[1]  By acting in *Brungard* exactly as it did in *Mayle*, it seems clear to me that the Supreme Court intended that *Brungard* proceed to trial as well.  Assuming Mr. Mayle has a remedy, Ms. Brungard must also.

I would adopt the view urged by Mr. Justice HARLAN in *Mackey v. United States*, 401 U.S. 667, 675-702 (1971) (separate opinion), wherein he argued that all *pending* cases be decided under the law most recently enunciated.  He pertinently said:

> Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule [is indefensible]. . . .
>
> Refusal to apply new constitutional rules to all cases arising on direct review may well substantially deter those whose financial resources are barely sufficient to withstand the costs of litigating to this Court, or attorneys who are willing to make sacrifices to perform their professional obligation in its broadest sense, from asserting rights bottomed on constitutional interpretations different from those currently prevailing in this Court.  More importantly, it tends to cut this Court loose from the force of precedent, allowing us to restructure artificially those expectations legitimately created by extant law and thereby mitigate the practical force of stare decisis, a force which ought properly to bear on the judicial resolution of any legal problem.

*Id.* at 679-81 (citations omitted).

---

[1] *See* footnote No. 34.

In *Hankerson v. North Carolina,* 432 U.S. 233 (1977), the U.S. Supreme Court gave retroactive application to a rule requiring a state to establish all elements of a criminal offense beyond a reasonable doubt. Mr. Justice POWELL, concurring, advocated Justice HARLAN's theory, writing:

> When the Court declines to hold a new constitutional rule retroactive, one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine. This hardly comports with the ideal of 'administration of justice with an even hand.'

*Id.* at 247 (footnote and citation omitted). *See also Harlin v. Missouri,* U.S. , 99 S. Ct. 709 (1979); *Linkletter v. Walker,* 381 U.S. 618 (1965).

It seems grossly unfair and inequitable to allow Mr. Mayle to recover while denying that same remedy to someone who is not only similarly situated but who has received from the Supreme Court an identical remand order.[2] Our Supreme Court, in remanding *Brungard* in light of *Mayle,* has apparently adopted Justice HARLAN's approach, and in my judgment, the effect of today's ruling is to ignore the clear import of that remand order. I know of no legal theory that supports this novel approach.

I would dismiss Mansfield State College's preliminary objections.

---

[2] In enacting Act 152 the Legislature, in Section 5(B) announced its desire to assure "the development of a consistent body of law, an orderly and uniform management of litigation and to prevent inequities . . . that would otherwise be caused by the lack of identical restrictions, limitations, procedural requirements and the application of the other provisions of this Act." I believe that we should be no less vigilant.

CONCURRING AND DISSENTING OPINION BY JUDGE WILKINSON, JR.:

I concur in the majority decision with regard to dismissing the action as to Mansfield State College (the Commonwealth). I must respectfully dissent from the transfer of the complaint against Professor Hartman with the direction that our decision in *Estate of Armstrong v. Pennsylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979) is controlling. For the reasons set forth in Judge MacPHAIL's and my dissents in that case, in my opinion Act 152, 42 Pa. C.S. §5110(b) is controlling and requires a dismissal of the complaint as to Professor Hartman as well as Mansfield State College.

---

CONCURRING AND DISSENTING OPINION BY JUDGE MacPHAIL:

I concur with the majority's decision to dismiss the complaint against Mansfield State College (the Commonwealth). I also agree that the complaint against Professor Hartman should be transferred to the Court of Common Pleas of Bradford County. I disagree, however, that in disposing of Professor Hartman's preliminary objections the Court of Common Pleas should apply the principles enunciated in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978). Rather, I would direct the Court of Common Pleas to apply the Act of September 28, 1978, P.L. 788 (Act 152), 1 Pa. C.S. §2310 and The Judicial Code, 42 Pa. C.S. §5110, in disposing of the preliminary objections. *See* my concurring and dissenting opinion in *Estate of Armstrong v. Pennsylvania Board of Probation and Parole,* 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979).

Judge MENCER joins in this concurring and dissenting opinion.