John Nagle and Yonish Trucking, Inc., Petitioners *v.* Pennsylvania Insurance Department et al., Respondents.

Argued June 6, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle. Reargued March 22, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt, DiSalle, Craig and MacPhail.

*Judith B. Reap*, with her *Leonard Schaeffer*, and *Pechner, Dorfman, Wolffe & Rounick*, for petitioners.

*Robert J. Demer* and *Bruce A. Krain*, Deputy Attorney General, with them *Thomas R. Balaban, William R. Balaban, Shaffer, Calkins & Balaban, David T. Kluz*, Assistant Attorney General, *John H. Isom*, Assistant Attorney General and *Robert P. Kane*, Attorney General, for respondents.

OPINION BY PRESIDENT JUDGE BOWMAN, October 26, 1979:

Substantial changes in the law brought about by the Federal Black Lung Benefits Act of 1972, 30 U.S.C. §901 et seq., and amendments to The Pennsylvania Workmen's Compensation Act by the Act of December 6, 1972, P.L. 1627, 77 P.S. 27.1(q), and rate filings for insurance coverage thereunder have spawned an incredible volume of litigation in this Court involving, in one or more cases, employers required to effect black lung coverage, insurers offering such coverage and their rating bureaus, the Insurance Department and its officials charged with approving rates for such coverages and the State Workmen's Insurance Fund in the performance of its responsibilities as prescribed by law.

In this particular case an individual and a corporation, asserting a class action, have filed a petition for review containing six counts, each against one or more respondents, which by reason of the factual averments and the reliefs sought, appear to be in the nature of an action in equity as to some counts, and in the nature of trespass as to other counts. Our present concern is a battery of preliminary objections filed by all of the respondents raising sovereign immunity, absolute immunity, objections in the nature of a demurrer and pleading deficiencies. Also raised is the named petitioners' standing to assert a class action.

Whether the named petitioners have standing to assert a class action, which they do as to all counts, bears directly upon the issue raised by demurrer as to particular counts against particular respondents, for if petitioners, apart from their class, have not stated a cause of action in some counts as against some respondents even if otherwise qualified, they cannot maintain the class action. Pa. R.C.P. No. 1702. Similarly, as to the issue of the jurisdiction of a court of equity to entertain a cause of action given the existence of an adequate remedy at law, pursued or unpursued, other litigation involving petitioners must be considered as well as statutory avenues of redress which are available but unpursued or are being pursued.

As has been correctly pointed out by respondents, the petition for review is markedly deficient in conforming to the niceties of pleading, particularly with regard to pleading alternative counts and particularity of damages. *See* Pa. R.C.P. Nos. 1020, 1021. We must, however, ascertain the nature of the cause of action asserted as to the various counts because, as above noted, our jurisdiction, jurisdiction of a court of equity and the availability of Chapter 15, Rules of Appellate Procedure, Petition for Review, are dependent, at least in part, upon such an analysis. We will for the

moment, therefore, disregard these pleading imperfections and rely upon the nature of reliefs sought to uncover the nature of the causes of action and thereby relate the sundry preliminary objections by subject matter to the count or counts of the petition targeted by each count.

## ACTIONS IN TRESPASS:

### SOVEREIGN AND ABSOLUTE IMMUNITY

Counts IV and VI and proposed amendments thereto aver that because petitioners were either intentionally or negligently induced to enter into insurance agreements dating back to 1973, they are entitled to rescind these contracts by virtue of their mistaken belief of a material fact, *i.e.*, proper classification, and are entitled to tort damages emanating from the conspired willful or negligent actions of respondents.

Respondents, Pennsylvania Insurance Department (Department), the Insurance Commissioner (Commissioner), and the State Workmen's Insurance Fund and its Board have all raised sovereign immunity and absolute immunity as a bar to the causes of action asserted in the sundry counts against the Department, the Board and respondent State Officers[1] to the petition for review as asserted. Other respondents have also raised immunity as the vehicle by which they assert this Court lacks jurisdiction over them for if the cause of action cannot be maintained against the

---

[1] Immunity, characterized as an affirmative defense, is properly raised in a responsive pleading under the heading "New Matter" rather than by preliminary objection. Pa. R.C.P. No. 1030. We have, however, acknowledged preliminary objection to be a proper vehicle for raising sovereign and absolute immunity when as here, that defense is apparent on the face of the pleadings. *Commonwealth ex rel. Milk Marketing Board v. Sunnybrook Dairies, Inc.*, 32 Pa. Commonwealth Ct. 313, 379 A.2d 330 (1977); *Harris v. Rundle*, 27 Pa. Commonwealth Ct. 445, 366 A.2d 970 (1976).

"Commonwealth government including any officer thereof . . ." we lack jurisdiction over the cause of action asserted against the other respondents. The Judicial Code, 42 Pa. C.S. §761.

When it is alleged that the Commonwealth or its officers share joint and several liability with others not the Commonwealth or its officers, then Section 761(a)(1) and (d) of the Judicial Code, 42 Pa. C.S. §761(a)(1), (d), may be construed to "[t]o the extent prescribed by general rule," to give the Commonwealth Court jurisdiction as to all the defendants in a case. *Freach v. Commonwealth*, 471 Pa. 558, 370 A.2d 1163 (1977). *See* Pa. R.C.P. No. 2229(b); *See also Witt v. Department of Banking*, 36 Pa. Commonwealth Ct. 298, 387 A.2d 1310 (1978); *Township of Pleasant v. Erie Insurance Exchange*, 22 Pa. Commonwealth Ct. 307, 348 A.2d 477 (1975).

A precondition to our consideration of the respondents' outstanding preliminary objections, however, is our continued jurisdiction over these proceedings. *Opie v. Glascow, Inc.*, 30 Pa. Commonwealth Ct. 555, 375 A.2d 396 (1977); *Schroeck v. Pennsylvania State Police*, 26 Pa. Commonwealth Ct. 41, 362 A.2d 486 (1976).

The Department of Insurance, the Board and the Fund, as an administrative department or agency of the government's executive branch, and the Insurance Commissioner, as an "officer" of the Commonwealth "charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government . . . ," *Opie, supra* at -559, 375 A.2d at 398, all fall within our original jurisdiction under Section 761(a)(1) of the Judicial Code, allowing us to rule on the issue of immunity, *Fischer v. Kassab*, 32 Pa. Commonwealth Ct. 581, 585, 380 A.2d 926, 928 (1977).

In the past, when faced with a situation where our jurisdiction over non-Commonwealth respondents was ancillary to our continuing jurisdiction over the Commonwealth or an officer thereof, the doctrines of sovereign immunity and absolute immunity of "high public officials" have compelled us to dismiss the cause of action as to the Commonwealth or its officers, and transfer the remaining cause(s) of action to the appropriate court of common pleas for lack of jurisdiction. *See Witt v. Department of Banking, supra; Fischer v. Kassab, supra;* Section 5103(a) of the Judicial Code, 42 Pa. C.S. §5103(a).

Since these preliminary objections were first briefed and argued, substantial changes in the law have been brought about by the decisions in *Mayle v. Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978), and the enactment of the Act of September 28, 1978, P.L. 788 (Act 152). We ordered reargument and directed the parties to address the issues raised by said decisions and Act of Assembly, as they relate to the continued viability of the defenses of sovereign and absolute immunity, and to the multiple causes of action asserted in the above petition.

We have had the benefit of neither brief nor argument from petitioners at said reargument. The Commissioner and the Insurance Department take the position that *Mayle* and *DuBree* are not controlling because Act 152 reinstates sovereign and absolute immunity. Nor, they add, does the instant cause of action fall within any of the exceptions to immunity contained in Act 152. The Coal Compensation Rating Bureau and its member companies have taken no position on the issue of immunity, arguing only their nongovernmental status.

Although this cause of action accrued prior to the effective date of Act 152, it is not within the exceptions

relating to limited waiver of sovereign immunity, *see* 42 Pa. C.S. §5110(a). Therefore, the application of Act 152 is controlled by our decision in *Brungard v. Hartman*, 46 Pa. Commonwealth Ct. 10, 405 A.2d 1089 (1979), and sovereign immunity constitutes a defense to this cause of action. *See* Section 5(b)(1) of Act 152, the Judicial Code, 42 Pa. C.S. §761 (note). The Department, the Board and the Fund must, therefore, be dismissed as parties to this cause of action.

Our treatment of those preliminary objections raising the absolute immunity of the Insurance Commissioner is controlled by our opinion in *Estate of Armstrong v. Pennsylvania Board of Probation and Parole*, 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979), in which we have held that despite the enactment of Act 152, which appears to retain traditional common law principles of absolute immunity, that Act incorporates by implication any changing principles of the common law. As *DuBree* sets forth new guidelines, those guidelines are to be applied.

*DuBree, supra* at 546, 393 A.2d at 296, stands for the proposition that "[w]here, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recovery is unjustified."

This is a cumulative test; all three elements must be present. We cannot say, as a matter of law, that under "analogous rules" a right of action would not lie given the averments of the petition. It is clear to us, however, that neither of the other two elements of the test are present in this case, and that the Commissioner must, as well, be dismissed as a party.

"It is in the public interest to avoid . . . a chilling effect upon [a public] servant's performance of his

duties.'' *DuBree, supra* at 544, 393 A.2d at 295. Such a ''chilling effect'' arises when no predictable standard of care exists whereby the public servant may exercise his judgment ''unhampered by the fear of unpredictable liability.'' *Id.*

Section 654 of The Insurance Company Law of 1921 (Insurance Company Law) Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §814, providing for review by the Commissioner of, *inter alia,* classification of risks and premium rates, is intended to regulate the formulation of a system of classification in premium rates, the purpose of which is to take into account the different casualty experience of different types of employers. *Insurance Department v. Colonial Gardens Nursing Home,* 22 Pa. Commonwealth Ct. 119, 347 A.2d 770 (1975). Sections 5 and 6 of the Act of June 2, 1915, P.L. 762, *as amended,* 77 P.S. §§241, 242, establish the method of determining the amount of premiums, their increase or decrease, and their schedule of payments. These Sections prescribe a multitude of criteria to be considered. Through the interaction of individual insurance companies, the Fund, the rating bureaus and the Board these criteria are digested and a premium rate fixed, subject to review by the Commissioner. This interaction is simply not conducive to a predictable standard of care, and should the spectre of liability loom over the approval or disapproval of a series of rate filings it could only result in artificially low premium rates unrelated to risk and cost, thus potentially depleting the fund and compromising the ability of claimants to collect on an otherwise valid claim. We believe this to be contrary to the public interest.

Finally, as will become abundantly clear below in our discussion of our equity jurisdiction, petitioners fail to clear the third hurdle as well. We are of the

opinion that administrative review procedures, with judicial recourse therefrom, are adequate to adjudicate the merits of petitioners' claim. We are further of the opinion that this barrier is all the higher when, as here, those very review procedures are being, or have been, pursued.

## EQUITY JURISDICTION

The interaction of Sections 3, 5 and 6 of the Act of June 2, 1915, P.L. 762 (Act), *as amended,* 77 P.S. §§221, 241 and 242, and Section 654 of the Insurance Company Law, create a State Workmen's Insurance Fund into which are paid the premiums required by Section 305 of the Act, 77 P.S. §501, to insure against liability under the Act. The classification of risks, underwriting rules and premium rates pertinent to the maintenance of the Fund, or the maintenance of insurance with duly authorized independent insurance companies, are proposed annually by the approved rating bureau, and subjected to review by the Insurance Commission. Thereafter

> [a]ny person, corporate or otherwise, aggrieved by such order, classification, rule, rate or schedule issued by the Insurance Commissioner may obtain a review thereof before the Insurance Commissioner, and if still aggrieved by such reviewed order, classification, rule or schedule may obtain a further review thereof in the [Commonwealth Court] by filing in said court a written petition praying that the order, classification, rule, rate or schedule issued by the Insurance Commissioner be modified amended or set aside in whole or in part.

Section 654 of the Insurance Company Law, 40 P.S. §814.

To the extent that the petition for review sounds in equity, certain of the respondents have filed preliminary objections challenging the jurisdiction of a court of equity to entertain a cause of action for which an adequate statutory remedy has been provided, to wit: review procedures set forth in Section 654, as those procedures have been interpreted by the Supreme Court in *Pennsylvania Coal Mining Ass'n v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977). Respondents further aver that not only are these remedies available, they have been, or are being, pursued.

The dockets of this Court are indeed congested with efforts by this same class of petitioners[2] to remove themselves from that classification of employers required to purchase "black lung" workmen's compensation insurance coverage. The issue is the extent to which these proceedings, whether original in nature or emanating by way of a petition for review of an administrative determination, preclude invocation of this Court's equity jurisdiction.

The history of these related proceedings begins on July 21, 1976, when several individuals, petitioner Nagle included, a corporation, and a coal haulers association, filed a petition for review (No. 1805 C.D.

---

[2] The history of these proceedings is detailed below in the body of the opinion. The instant petition encaptions as petitioners one John Nagle, an individual residing in Ashville, Pennsylvania, and Yonish Trucking Corp., and seeks certification as a class action, alleging all members of the class to be engaged solely in the business of transporting coal from the mines. One other petition (No. 502 C.D. 1978) lists as petitioner only the name John Nagle, "and all others similarly situated." Each of the other petitions discussed *infra*, encaption Nagle, several individuals, Buckhorn Truck Salvage, Inc., Western Pennsylvania Coal Haulers Ass'n, and "all persons similarly situated." The substance of each of these petitions emanates from the same set of operative facts, *i.e.*, the classification of the class of coal truck operators in a group required to pay high-risk "black-lung" workmen's compensation insurance premiums.

1976) in the nature of an action in equity against the Insurance Commissioner and his Department, the gravamen of which included the same attack upon the inclusion of petitioner coal haulers within "Black lung" workmen's compensation insurance classification as does the instant petiton.

Upon filing of the aforesaid petition for review, petitioners sought a preliminary injunction (No. 1279 C.D. 1976), hearing on which was stayed pending administrative review proceedings initiated pursuant to Section 654 of the Insurance Company Law, 40 P.S. §814.

On February 2, 1977, these administrative proceedings culminated in an adjudication by the Commissioner withdrawing approval of the rate plan and classification system for trucking companies which haul coal exclusively from mines or tipples, continuing payment of "currently-effective" rates,[3] and directing the Bureau to evaluate the companies' operations and propose an amended rating plan and classification system.[4]

---

[3] The existing rate would have been the 1975 rate of $27.00 per $100.00 payroll but for the decision of the Supreme Court in *Pennsylvania Coal Mining Ass'n v. Insurance Dep't*, 471 Pa. 437, 370 A.2d 685 (1977), which ruled as unconstitutional the amendatory provisions of Section 654 allowing for "deemed" approval by the Commissioner of proposed rates. The rate remaining in effect, therefore, and being paid into escrow, was the 1974 rate, $18.54 per $100.00, itself a subject of appeal in *Insurance Department v. Pennsylvania Coal Mining Ass'n*, 26 Pa. Commonwealth Ct. 348, 363 A.2d 823 (1976).

[4] The Coal Mine Compensation Rating Bureau subsequently informed the Commissioner that petitioners should be assigned to a classification and rate under the jurisdiction of a single rating bureau, whereupon the Pennsylvania Coal Mine Compensation Rating Bureau entered the controversy and proposed a rate of $2.35 which, when finally approved by the Commissioner represented a ninety (90%) per cent reduction in the occupational disease portion of petitioners' workmen's compensation insurance coverage.

This adjudication was the subject of cross appeals filed by Nagle (No. 406 C.D. 1977) and the Department (No. 481 C.D. 1977), during the pendency of which the petitioners renewed their application for preliminary injunction (No. 1279 C.D. 1976).

This application was denied March 22, 1977, by memorandum opinion and Order of President Judge Bowman and appealed to the Supreme Court.

On November 28, 1977, the Bureau withdrew its appeal from the Commissioner's adjudication at No. 481 C.D. 1977. On January 26, 1978, Nagle followed suit (No. 406 C.D. 1977). Nagle had, in the meantime, on March 25, 1977, withdrawn the appeal to the Supreme Court from the Order at No. 1279 C.D. 1976 denying preliminary injunction.

Round two began in April of 1977 when the Pennsylvania Compensation Rating Bureau (PCRB) to which had been assigned the responsibility of reclassifying petitioners, formally filed with the Commissioner an occupational disease rate of two dollars and thirty-five cents ($2.35) for petitioners. On June 29, 1977, no objections having been filed to the proposed rate, the Commissioner formally approved the PCRB proposal, effective retroactively to June 1, 1977.

On May 12, 1977, Nagle filed the instant cause of action at 972 C.D. 1977 requesting generally relief from allegedly improper rate classification for a class of plaintiffs reputed to be in excess of one thousand (1,000) individuals and/or businesses. Specific reliefs sought include: enjoining all compensation rates being imposed and collected; voiding all Coal Mine Compensating Rating Bureau rate proposals; an accounting of all premiums paid since 1973; and attorney's fees.

The filing of this petition for review predated a final order of the Commissioner on August 10, 1977, ordering a refund of all premiums paid in excess of $2.35, effective retroactively to February 7, 1977, the

date approval of the rate plan and classification system had originally been withdrawn.

This order was in its own turn the subject of cross appeals by the Bureau (No. 1824 C.D. 1977) and Nagle (No. 1829 C.D. 1977).

In conjunction with its appeal the Bureau applied to this Court for a supersedeas, which application was granted insofar as it related to the period between February 7, 1977, and June 29, 1977, subject to filing a $175,000.00 bond into court. The member companies of the Bureau chose not to file the bond, thereby reinstating the effect of the Commissioner's order. In the meantime, on November 28, 1977, the Bureau withdrew its petition for review at No. 1824 C.D. 1977.

The petition for review at No. 1829 C.D. 1977, requesting, in essence, clarification of the August 10, 1977, order so that it applies back to all rates since 1973, remains outstanding.

Yet another round of litigation was spawned on March 2, 1978, when the Commissioner, in disposing of an unanswered petition filed by the Coal Mine Compensation Rating Bureau, stayed all application of the August 10 order until thirty (30) days after disposition by this Court of the outstanding preliminary objections to No. 972 C.D. 1977. This stay order was the subject of yet a third petition for review docketed at No. 502 C.D. 1978, which petition sought to vacate the Commissioner's stay order. This, too, was withdrawn in February of 1979.

Several corollaries of the same basic tenet of equity jurisdiction are involved in this case. Equity has jurisdiction only in the absence of a full, complete and adequate remedy at law. *Sexton v. Stine,* 456 Pa. 301, 319 A.2d 666 (1974); *St. Joe Minerals Corp. v. Goddard,* 14 Pa. Commonwealth Ct. 624, 324 A.2d 800 (1974). This axiom will hold to negate a cause of action in equity when the legal remedy has been ignored,

*see e.g., Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976); *Commonwealth v. Glen Alden Corp.,* 418 Pa. 57, 210 A.2d 256 (1965); when it has been pursued, but with results unsatisfactory to a claimant, *St. Joe Minerals Corp. v. Goddard, supra* at 629, 324 A.2d at 803; *cf. Pennsylvania Life Insurance Co. v. Pennsylvania National Life Insurance Co.,* 417 Pa. 168, 208 A.2d 780 (1965) (statutory proceedings instituted, adjudication had, no appeal taken, equity will not assume jurisdiction); or when it is in the midst of being resolved, *Aldine Apartments, Inc. v. Department of Revenue,* 32 Pa. Commonwealth Ct. 296, 379 A.2d 333 (1977); *St. Joe Minerals Corp. v. Goddard, supra.*

The Statutory Construction Act of 1972, 1 Pa. C.S. §1504, demands strict compliance with statutorily prescribed procedures. This rule is particularly cogent within the context of proceedings before a quasi-judicial administrative agency.

> When the legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into matters within the various agencies' respective domains.

*Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 6, 383 A.2d 791, 793 (1978) (footnote omitted).

To be sure, the preclusion of equitable jurisdiction is premised upon the adequacy of the legal remedy. Where it is clear that the administrative process cannot serve to resolve the issues in question, or provide

the sought-after remedy, then equity will intervene. *Feingold v. Bell of Pennsylvania, supra; Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974); *Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963).

Petitioners have neglected to indicate to us, however, any reason they believe the administrative review process, with judicial recourse therefrom, is inadequate with respect to the reliefs sought in their petition for review as against the government agencies and officials named in sundry counts. We cannot honor such prayers for relief when pending in this Court is a petition for review from an administrative determination which purports to address the very issues which would have to be resolved in directing any sort of relief that could be granted against such governmental agencies or officials.

Nor have petitioners disclosed the compelling nature of these requests with respect to any relief obtainable by way of appeals which could have been, or have been, directed to this Court subsequent to administrative adjudication, this being a prerequisite to any form of injunctive relief.

In our memorandum opinion and order of May 22, 1977, denying the initial application for a preliminary injunction (No. 1279 C.D. 1976), we made the following still pertinent comments:

> [W]e cannot ignore the outstanding preliminary objections of respondent raising a jurisdictional issue as affecting the authority of a chancellor to issue a preliminary injunction. . . . This . . . objection appears to be well taken, and the asserted remedy at law is the very remedy employed and participated in by the parties to this proceeding. For this reason alone, a refusal to grant the requested preliminary injunction is

warranted. When considered together with the fact that the adequate remedy at law has been conducted and an adjudication issued from which petitioners here have filed an appeal (No. 406 C.D. 1977), to allow further proceedings in this case by way of issuing a preliminary injunction would be to recognize a litigant's right to simultaneously pursue two distinct causes involving the same issues and to diminish, if not obviate, the role of state administrative agencies charged with enforcing the law as having an expertise to which courts assign substantial weight.

Identical considerations compel dismissal of those counts in petitioner's petition for review in the nature of a complaint in equity. Petitioner has already filed one equity action (No. 1805 C.D. 1976), which was discontinued so that statutory remedies could be pursued. These procedures culminated in an adjudication (February 2, 1977). An appeal was taken (No. 406 C.D. 1977), but then withdrawn. Application for interim injunctive relief was made (No. 1279 C.D. 1976), denied, and appeal therefrom withdrawn. To the extent that the instant petition for review is repetitious of these previous applications, we hold petitioners have waived any right to equitable relief. This pertains particularly to injunctive relief. To the extent that objection to the February 2, 1977 order was revived by similar considerations in the Commissioner's "final adjudication" of August 10, 1977, and appeal therefrom is pending (No. 1829 C.D. 1977) the doctrines of primary administrative jurisdiction, and exhaustion of remedies, including appeal from final administrative adjudications, compel dismissal of those counts which rely on applications for relief more properly considered in the collateral proceedings. This pertains particularly to the requests for an accounting

of all funds allegedly overpaid since 1973, and the request to have voided all rating bureau classification proposals since 1973.

We are, as well, mindful of the fact that sovereign immunity and absolute immunity will act to bar suits in equity when they seek to compel affirmative action on the part of a state official or obtain some form of money damages or property from the Commonwealth. *Philadelphia Life Insurance Co. v. Commonwealth*, 410 Pa. 571, 190 A.2d 111 (1968) ; *Concerned Taxpayers of Allegheny County v. Commonwealth*, 33 Pa. Commonwealth Ct. 518, 382 A.2d 490 (1978). To the extent, therefore, that the instant petition seeks a return of allegedly overpaid premiums, through an order to compel him to make his refund order retroactive to 1973 in lieu of February 7, 1977, it is barred.

As an award of attorney fees out of a fund, assuming arguendo entitlement thereto, is dependent upon creation of the fund, any present request for such fees is premature. We note, however, that a litigant is ordinarily responsible for the fees of counsel employed by him, absent express statutory authorization for the award of such fees. An exception does arise in the situation where an attorney's services to his client create a fund for the benefit of others as well as his own client, or, corollarily, when an action by one of a class is necessary to protect the interest of the class, apparently the premise upon which present counsel found their request. *See generally* 1 STANDARD PENNSYLVANIA PRACTICE 291 (2d ed. 1960) ; 15 STANDARD PENNSYLVANIA PRACTICE 613 (2d ed. 1965) ; *Feist v. Luzerne County Board of Assessment Appeals*, 22 Pa. Commonwealth Ct. 181, 347 A.2d 772 (1975). Class status, or lack of it is however, irrelevant to whether an action will be heard at law, in equity, or whether statutory administrative remedies must be pursued. *Lillian v. Commonwealth, supra; Aldine Apartments,*

*Inc. v. Department of Revenue, supra.* As our holding that the instant petition for review must be dismissed vitiates any application for class certification, any request for attorney's fees premised thereon dissipates.[5]

With the removal of the Commonwealth government and the dismissal of the counts in equity, this Court is without ancillary jurisdiction over the remaining respondents. It has been brought to our attention, however, that Section 21 of the Act, 77 P.S. §362, as amended by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202 (JARA), 42 P.S. §20002 [996], allows that "[t]he Fund may . . . sue or be sued to enforce any right given against or to any subscriber or other person under this act or the Workmen's Compensation Act of 1915, or the Federal Coal Mine Health and Safety Act of 1969, [30 U.S.C.A. §801 *et seq.*]. . . ."

Section 3 of the Act, 77 P.S. §221 provides, that the Fund shall be administered *"without liability on the part of the State"* (emphasis added), save, as we construe Section 21, for the limited waiver of this disclaimer when a workmen's compensation claim is being prosecuted. This lawsuit, inasmuch as it seeks a rebate of allegedly overpaid premiums, is not such a claim. *See, e.g., Weinberg v. State Workmen's Insurance Fund,* 368 Pa. 76, 81 A.2d 706 (1951).

In the end, the surplusage of litigation initiated by petitioners and others preclude entertainment of the instant petition for review. It would be decidely improper for us to adjudicate upon the myriad of claims contained within this petition when to do so would fly in the face of all principles of primary administrative

---

[5] Argued as a companion case to the instant petition for review is a class action suit for attorney's fees (No. 2242 C.D. 1977) filed by the law firm prosecuting the instant petition for review as distinguished from individual counsel. The same considerations apply to compel dismissal.

jurisdiction and judicial economy. By virtue of our disposition of the counts in equity, and the dismissal of all Commonwealth respondents, we no longer have jurisdiction over these proceedings, and must transfer the cause as to remaining respondents to the appropriate court of common pleas.

ORDER

Now, October 26, 1979:

1. The preliminary objections of the Insurance Commissioner, the Insurance Department, the State Workmen's Insurance Board, and the State Workmen's Insurance Fund, raising the defenses of sovereign and absolute immunity are sustained and as to said respondents all counts in trespass are dismissed.

2. The above counts in equity are dismissed for lack of jurisdiction in equity.

3. As to the remaining respondents, these proceedings are hereby transferred to the Court of Common Pleas of Philadelphia County for further proceedings, including disposition of remaining outstanding preliminary objections of the other respondents. 42 Pa. C.S. §5103.

---

CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I dissent from the majority where it sustains the preliminary objections of the Department, Board and Fund for those reasons stated in my Concurring and Dissenting Opinion filed in *Brungard v. Hartman*, 46 Pa. Commonwealth Ct. 10, 405 A.2d 1089 (1979). I concur in all other respects.

---

CONCURRING AND DISSENTING OPINION BY JUDGE DISALLE:

I dissent from that part of the majority's decision sustaining, on grounds of sovereign immunity, the preliminary objections of the Pennsylvania Department

of Insurance, the State Workmen's Insurance Board, and the State Workmen's Insurance Fund (all Commonwealth agencies) for the reasons set forth in my concurring and dissenting opinion in *Estate of Armstrong v. Pennsylvania Board of Probation and Parole*, 46 Pa. Commonwealth Ct. 33, 405 A.2d 1099 (1979). I concur in the majority decision in all other respects.