## Templeton v. Hempt Brothers Inc.

*Marlin R. McCaleb,* for plaintiffs. ·
*Sarah Slesinger Smith, deputy attorney general* for the Commonwealth.
*James K. Thomas, II,* for defendant Hempt Brothers, Inc.

SHEELY, *P.J.,* June 7, 1985 — Plaintiffs' home is situated along the Wertzville Road in East Pennsboro Township. Their complaint alleges that prior to May, 1983, defendant Hempt Brothers, under the direction of the Commonwealth, undertook to widen and raise the Wertzville Road, a state highway. Plaintiffs allege that as a result a dangerous condition was created in that the highway was raised above the level of their lands, so that surface water flowing along and across the highway then flowed down into their driveway and onto their lands.

To alleviate this dangerous condition, the complaint avers that defendants subsequently entered upon plaintiffs' land and designed and installed an inlet and an underground drain, which was constructed and installed in and under the mouth of their driveway. The inlet and drain runs along and through their lands for 125 feet and discharges in a nearby stream.

During the course of construction of the inlet and drain, defendants allegedly broke plaintiffs' sewer lateral. The sewer lateral then backed up and overflowed into plaintiffs' basement, discharging raw and untreated sewage onto the basement floor of their home. Plaintiffs seek damage for both property damage and for health problems which were allegedly caused by the sewage.

The Commonwealth filed preliminary objections in the nature of a demurrer, claiming that the complaint should be dismissed for failing to state a claim falling within any of the eight enumerated exceptions to sovereign immunity set forth in the Judicial Code at 42 Pa.C.S. §8522(b).

## THE PRELIMINARY OBJECTIONS

Pa.R.C.P. 1030 provides: "All affirmative defenses including but not limited to the [defense] of . . . immunity from suit . . . shall be pleaded in a responsive pleading under the heading *'New Matter.'* " (Emphasis added.) The Commonwealth did not raise the affirmative defense of immunity from suit in new matter. It raised this issue via preliminary objections. However, plaintiff did not object to this procedure.

This procedural irregularity does not preclude the court from considering the issue of immunity from suit. Where no party has objected to the manner of raising the issue, the court may consider it. Freach v. Commonwealth, 471 Pa. 558, 370 A.2d 1163 (1977); Bass v. Cuyler, 36 Pa. Commw. 74, 387 A.2d 964 (1978). But, preliminary objections in the nature of a demurrer which raise the issue of sovereign immunity will only be granted where that defense is apparent on the face of the complaint. Nagle v. Pennsylvania Insurance Dept., 46 Pa. Commw. 621, 406 A.2d 1229 (1979), affirmed in part, reversed in part in Pechner, Dorfman, Wolffe, Rounick and Cabot v. Pennsylvania Insurance Department, 499 Pa. 139, 452 A.2d 230 (1982), on remand 74 Pa. Commw. 400, 459 A.2d 925 (1983); Iudicello v. Commonwealth, Department of Transportation, 34 Pa. Commw. 361, 383 A.2d 1294 (1978); Commonwealth ex rel. Milk Marketing Board v. Sunnybrook Dairies, 32 Pa. Commw. 313,

379 A.2d 330 (1977); Brown v. Mendisana, 11 D. & C. 3d 218 (1979); Krock v. Somerset State Hospital, 32 Som. L.J. 236 (1976).

We feel that plaintiff has pleaded facts which bring the case under one of the exceptions to sovereign immunity set forth in 42 Pa.C.S. §8522(b). Accordingly, we will rule on the issue of sovereign immunity now rather than require the Commonwealth to raise the issue in new matter. The Commonwealth has chosen to raise the issue without responding directly to the complaint or without pleading any new facts. We will therefore rule now on the substantive issue the Commonwealth has raised.

The standard upon which we must decide the issue is set forth in Reinford v. Conrail, 46 Pa. Commw. 167, 405 A.2d 1151 (1979):

"The initial contention of PennDOT raised by way of demurrer is that Reinford has failed to state a cause of action because he failed to state facts supportive of recovery under one of the eight categories of permissible claims for relief against the Commonwealth enumerated in section 5110(a) of the Judicial Code, 42 Pa.C.S. §5110(a). It is well settled law that a preliminary objection in the nature of a demurrer is not to be sustained and the complaint dismissed unless 'the law says with certainty that no recovery is possible.' Hoffman v. Misericordia Hospital, 439 Pa. 501, 503, 267 A.2d 867, 868 (1970); Ammlung v. Platt, 224 Pa. Super. 47, 59, 302 A.2d 491, 498 (1973). ' "In considering the demurrer, every well-pleaded material fact set forth in the complaint, as well as all inferences reasonably deductable therefrom, must be taken to be admitted. . . . But if there is any doubt as to whether the demurrer should be sustained, such doubt should be resolved in favor of refusing to enter it." ' (Citations omitted.) Department of Transportation

v. Bethlehem Steel Corp:, 33 Pa. Comm. 1, 11, 380 A.2d 1308, 1313 (1977). Although this complaint borders on failing to state a cause of action, in light of a thorough review of the pleadings in this case and upon careful examination of the aforementioned standards by which preliminary objections are to be judged, we believe that the omission of underlying facts is substantial, but not so substantial as to warrant the foreclosing of litigation at the present time. Under the facts alleged, we are not prepared to say that no recovery is possible. As such, we cannot grant PennDOT's demurrer." Id. at 168-69, 405 A.2d at 1152.

## SOVEREIGN IMMUNITY

On July 14, 1978, the Pennsylvania Supreme Court abrogated the doctrine of sovereign immunity in Pennsylvania. Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A.2d 709 (1978). In response to Mayle, the General Assembly enacted the Act of September 28, 1978, P.L. 788 (Act 152),* which reinstated the doctrine of sovereign immunity, except for eight categories in which immunity was specifically waived. The current state of the law is expressed by the Pennsylvania Commonwealth Court in Marino v. Seneca Homes, Inc., 63 Pa. Commw. 534, 439 A.2d 1287 (1981):

"It is now firmly established that as to causes of action which accrued prior to September 28, 1978, the defense of sovereign immunity will not lie and with respect to causes of action which accrued on or after September 28, 1978, sovereign immunity is a bar except as to those circumstances set forth in Act

---

* Statutory provisions relating to sovereign immunity now appear at 1 Pa.C.S. §2310 and 42 Pa.C.S. §§8521-8528.

152 where the Commonwealth has waived its immunity." 42 Pa.C.S. §8522. Id. at 538, 439 A.2d at 1289.

The following subsections of 42 Pa.C.S. §8522 are relevant to the instant case:

§8522. Exceptions to sovereign immunity

. . .

(b) Acts which may impose liability.—

The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by: . . .

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

(5) Potholes and other dangerous conditions.—A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph."

The first issue we must decide is whether plaintiffs have pleaded facts which bring this case under either of the exceptions in subsections 4 or 5.

The primary difference between the two subsections is that under subsection 5, written notice of the condition is required before the Commonwealth can be held liable. The Commonwealth maintains that it must have received notice, either actual or constructive, of the condition of which plaintiffs complain.

We find that subsection 5 was intended by the legislature to have a narrow purpose. It specifically mentions "potholes or sinkholes or other similar conditions." It requires written notice before the Commonwealth can be held liable for damages caused by those types of intermittent or random conditions. However, the dangerous conditions which are the result of other more permanent and long term situations do not require notice under subsection 4 of the Act. If the legislature had intended notice to be a requirement in subsection 4 it would have made that clear in the same manner it did in subsection 5. We find the facts in the instant case fall under subsection 4.

In Mistecka v. Commonwealth, 46 Pa. Commw. 267, 408 A.2d 159 (1979), motorists were injured when rocks were thrown at their automobiles by third parties standing on an overpass. The court found that the complaint stated a claim which fell within the waiver of sovereign immunity found in subsection 4. In doing so, the court noted that there had been 26 similar rock-throwing incidents reported to the state police during the preceding two years, but the Commonwealth had taken no steps to protect motorists from such rock throwing.

The Commonwealth maintains that Mistecka requires notice when a plaintiff proceeds under

subsection 4. Mistecka does not require this. The basis of the Commonwealth Court's decision was not that the Commonwealth had notice; rather that the prior incidents established a history of such events which in turn gave rise to a "dangerous condition" under subsection 4. The discussion of the prior incidents must be understood within the unique factual situation in which they took place.

The next issue is whether the facts alleged in the case at bar constitute a "dangerous condition" as contemplated by the statute. In Mistecka, the Commonwealth Court cites Webster's Dictionary that a "dangerous condition" is " 'a state of affairs that hampers or impedes or requires correction.' " Mistecka at 273, 408 A.2d at 162. This definition was extended by the Commonwealth Court in Preteroti v. Uniservice, Inc., 51 Pa. Commw. 74, 413 A.2d 787 (1980), to include:

"To state a cause of action within the limited waiver of section 5110(a)(4) [now 42 Pa. C.S. §8522(b)(4)], Uniservice had to plead 'a state of affairs that hampers of impedes or requires correction." Mistecka v. Commonwealth of Pennsylvania, 46 Pa. Commw. 267, 408 A.2d 159 (1979), as well as aver that the resulting condition was dangerous. [Footnote omitted.] Id. at 77, 413 A.2d at 789.

Plaintiffs have brought themselves within the criteria set forth in Preteroti. They have averred that the rebuilding of the highway caused run-off and that the Commonwealth's efforts to correct this situation resulted in the breakage of their sewer lateral. The situation "requires correction" and the breaking of a sewer lateral is obviously inherently dangerous.

We also note that it is for the jury to determine whether the condition was in fact dangerous. The

plaintiff's averment to that effect in Paragraph 10 is sufficient to overcome a demurrer.

In Bissett v. Pennsylvania Game Commission, 27 D. & C. 3d 578 (1983), where a man who had been shot at by a deer hunter and shot at by many more, sued the state for allowing deer hunting on a particular island, the court noted:

"Defendants cite Preteroti v. Uniservice, Inc., 51 Pa. Commw. 74, 413 A.2d 787 (1980), to advance the contention that a 'dangerous condition' must be an intrinsic part of the real estate itself. Uniservice involved a death action that was brought after a woman drowned when she voluntarily left a rental boat to swim in a prohibited part of a lake owned by the Commonwealth."

In dismissing the action, the court stated:

"There is no allegation that special characteristics or attributes of the lake made it dangerous or that the failure to enforce the regulations created a hazardous condition. Rather, Uniservice argues that by "implication" an area in which swimming is prohibited must be considered as containing a "dangerous condition" for the purpose of (a)(4), 42 Pa. C.S. §5110(a)(4). [Now 42 Pa. C.S. §8522(b)(4)]. We must disagree . . .

"To state a cause of action within the limited waiver of section 5110(a)(4), Uniservice had to plead "a state of affairs that hampers or impedes or requires correction." Mistecka v. Commonwealth of Pennsylvania, 46 Pa. Commw. 267, 408 A.2d 159, 162 (1979), as well as aver that the resulting condition was dangerous.'

We think that the case is distinguishable because the 'state of affairs' in the instant matter is correctable, i.e., by limiting the number of hunters or some other method." Id., at 583.

The same holds true in the present case. The state of affairs along the Wertzville Road was easily correctable by the state. For this reason, the case is distinguishable from Preteroti, and the Commonwealth's reliance on same is misplaced.

There is authority for the proposition that excessive water run-off caused by road construction is a "dangerous condition," actionable under 42 Pa. C.S. §8522(b)(4).

In Steckley v. Commonwealth, Department of Transportation, 46 Pa. Commw. 367, 407 A.2d 79 (1979), plaintiffs alleged that the construction of a state highway resulted in surface water damage to their property. The Commonwealth Court ruled that the cause of action came under the exception found in Act 152, 42 Pa. C.S. §5110(a)(4), the predecessor to §8522(b)(4).

In Lutzko v. Mikris, Inc., 48 Pa. Commw. 75, 410 A.2d 370 (1979), defendant was permitted to join PennDOT as an additional defendant on the basis that PennDOT failed to maintain proper drainage along the state highway abutting the subject property and that it negligently changed the grade of the road without installing appropriate drainage facilities.

It is true that in the case at bar, the damage plaintiffs complain of did not occur directly as a result of the run-off from the Wertzville Road. It occurred because defendants broke plaintiffs' sewer lateral while attempting to correct the drainage problem. This fact should not preclude plaintiffs' relief. In Filipelli v. Commonwealth, Department of Transportation, 68 Pa. Commw. 619, 450 A.2d 237 (1982), plaintiffs alleged that the Commonwealth was negligent in its installation of a culvert. Plaintiffs sued for damages to their businesses when the road was subsequently closed for repairs after a

washout. The Commonwealth Court held that because the damages resulted from the closing of the road, and not the "dangerous condition" of the highway, the plaintiffs could not recover. But the court also observed: "Had appellants sustained property damage because of the initial overflow, rather than the closing of the roadway for repair, the complaint would have been well founded." Id. at 622, 450 A.2d at 239. In Filipelli, the Commonwealth Court held that the Commonwealth may be held liable for run-off from newly constructed highways as well as liable for negligent attempts to correct the run-off.

The Commonwealth attempts to distinguish the instant case by pointing out that the above cases dealt with situations where plaintiffs were suing for property damage. Here, plaintiffs seek damages for both property damage and personal injuries. This does not defeat plaintiffs' claim. In 42 Pa. C.S. §8522(a) it is stated that the Commonwealth waives sovereign immunity "in the instances set forth in subsection (b) . . . for *damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.*" (Emphasis added.)

Accordingly, personal injuries obviously fall under the ambit of the statute. If personal injuries are "recoverable under the common law" they are recoverable under the statute. Furthermore, the use of the word "injury" in the statute also indicates the legislature's intent to include personal injuries.

The Commonwealth cites Lerro v. Commonwealth, Department of Transportation, 32 Pa. Commw. 372, 379 A.2d 652 (1977), in support of its position. In Lerro, the court held that plaintiffs were barred from recovering for trespass and nuisance

resulting from highway improvements under the doctrine of sovereign immunity. Lerro, however, is not applicable. It was decided on November 14, 1977, almost a year before the enactment of Act 152, which granted the current exceptions to sovereign immunity.

The Commonwealth claims that Lerro was followed in Ostoich v. Wilson, 46 Pa. Commw. 524, 406 A.2d 1200 (1979). In that case, plaintiffs sued the Secretary of PennDOT personally for damages caused by highway improvements. Ostoich was decided after Act 152 had been enacted. However, it was not a sovereign immunity case. A state official was being sued personally. Plaintiffs were denied recovery on the basis of three leading cases dealing with official immunity: DuBree v. Commonwealth, 481 Pa. 540, 393 A.2d 293 (1978); Snow v. Pastories, 46 Pa. Commw. 43, 405 A.2d 1114 (1979); and Estate of Armstrong v. Pennsylvania Board of Probation and Parole, 46 Pa. Commw. 33, 405 A.2d 1099 (1979). Ostoich did cite Lerro but not for any theory of sovereign immunity. Ostoich cited Lerro for the proposition that the plaintiffs should be denied injunctive relief "because [their] exclusive remedy lies in the Eminent Domain Code . . ." Ostoich at 526, 406 A.2d at 1201.

Accordingly, we enter the following

## ORDER OF COURT

And now, this June 7, 1985, the preliminary objections in the nature of a demurrer to plaintiffs' complaint by defendant, Commonwealth of Pa., Department of Transportation, are dismissed. .